**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Keith Turner,<br><br>    Plaintiff,<br><br>v.<br><br>JCB Corporation, et al.,<br><br>    Defendants. | No. CV-17-00572-PHX-ROS<br><br>**ORDER** |

Trial is set to begin on October 1st but it remains unclear what claims Plaintiff will pursue at trial. Plaintiff will be required to file a statement identifying the precise legal and factual basis for his claims. As for Defendant JCB Corp., it will be required to file a statement outlining the *specific* evidence it wishes to exclude through its motions in limine. And finally, the parties will be required to submit another set of jury instructions in complete compliance with the Court's requirements.

**BACKGROUND**

Plaintiff Keith Turner worked as a truck driver for Defendant JCB Corporation. Plaintiff was either an independent contractor or an employee. According to Plaintiff, on May 26, 2016, he received a phone call from Cody Eaton, the owner of JCB. During that phone call, Eaton allegedly referred to Plaintiff as a "nigger" and talked about the Ku Klux Klan. Shortly after that call, Plaintiff complained about Eaton's conduct. Plaintiff then continued to work for JCB but soon thereafter JCB informed Plaintiff he had breached a leasing agreement regarding a truck Plaintiff had been leasing from JCB. Plaintiff

disagreed that he had breached the leasing agreement. Plaintiff then stopped working for JCB and JCB repossessed the truck.

In February 2017, Plaintiff filed the present suit alleging claims for "hostile work environment" and "retaliation" pursuant to 42 U.S.C. § 1981 and Title VII.[1] (Doc. 3). As alleged in the amended complaint, the hostile work environment claims appeared to be based solely on the phone call. As a result of the phone call, Plaintiff alleged he had been "constructively discharged."[2] (Doc. 3 at 7). As for the retaliation claims, Plaintiff alleged JCB took "away [Plaintiff's] truck in violation of the lease agreement and terminated his employment" shortly after he complained about the phone call. (Doc. 3 at 9). Plaintiff has never explained how he was "constructively discharged" in connection with the alleged hostile work environment but he was also "terminated" in connection with his retaliation claim.

JCB answered and asserted counterclaims for breach of contract and breach of the covenant of good faith and fair dealing based on Plaintiff allegedly not making all the payments due under the lease agreement. The parties proceeded with discovery but it appears neither side conducted much discovery. The parties eventually filed cross-motions for summary judgment but those motions did not address the nature of Plaintiff's non-retaliation claims in any detail. That is, there was no discussion whether Plaintiff was pursuing "hostile work environment" claims, "disparate treatment" claims, or some combination. The summary judgment motions were denied and the case was set for trial.

The parties' Joint Proposed Pretrial Order does not clearly set forth what claims Plaintiff will pursue at trial. In the section of that document regarding the "nature of this action," the parties merely state this is "an employment discrimination case, where Plaintiff

---

[1] The Ninth Circuit has "recognize[d] that those legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action." *Manatt v. Bank of Am., NA*, 339 F.3d 792, 797 (9th Cir. 2003).
[2] A hostile work environment claim does not require any adverse employment action. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (holding Title VII and § 1981 hostile work environment claim requires plaintiff be "subjected to verbal or physical conduct because of [his] race, . . . the conduct was unwelcome, and . . . the conduct was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment").

claims his former employer called Plaintiff multiple derogatory names." (Doc. 89 at 2). And in the section requiring Plaintiff list the elements of his claims, Plaintiff merely states he must prove he "was discriminated against and/or harassed based on his race" and that he was retaliated against when he complained. While the Joint Proposed Pretrial Order does not state whether Plaintiff is pursuing "hostile work environment" claims or "disparate treatment" claims, the joint proposed jury instructions contain instructions regarding both types of claims. The jury instructions indicate the parties have objections to some of the proposed instructions but, contrary to the Court's procedures, the parties did not provide explanations of their objections nor responses to the objections.

## ANALYSIS

### I. Plaintiff's Claims

In an attempt to streamline the trial, Plaintiff will be required to file a statement outlining the precise claims he plans to pursue at trial. For each claim, Plaintiff must state the elements he must prove at trial and provide a brief statement of the evidence he will offer establishing that element. For example, if Plaintiff plans on pursuing a "hostile work environment" claim, he must identify the elements of that claim and set forth the facts he will prove to establish each element. If Plaintiff's "hostile work environment" claim is based on a single phone call, he must provide legal authority establishing a single phone call can be a sufficient basis for establishing "hostile work environment" liability.

Beyond the uncertainty surrounding Plaintiff's claims, there is another dispute about the applicability of Title VII. The parties disagree whether JCB had enough employees for Title VII to apply. As the party who will bear the burden of proving Title VII applies, Plaintiff's statement must also identify the evidence he will offer to prove JCB had at least fifteen employees during the relevant time period.

### II. Motions in Limine

JCB filed four motions in limine. Those motions argue Plaintiff did not properly disclose evidence and, even if the disclosure issues are overlooked, there are substantive reasons why the evidence will not be admissible. JCB's disclosure arguments are not

convincing and, to the extent JCB has substantive objections, it has not outlined the specific evidence in sufficient detail to allow the Court to resolve most of the disputes.

### A. Preclude Mike Moore from Testifying

In his First Supplemental Disclosure Statement, Plaintiff listed Mike Moore under the section regarding individuals who were "likely to have discoverable information that [Plaintiff] may use to support [his] claims." (Doc. 75-1 at 3). In addition to listing Moore and providing his telephone number, Plaintiff stated "Mr. Moore was an Owner-Operator working under Mr. Turner. Mr. Moore was also subject to discrimination by Defendants, and will testify regarding the same." (Doc. 75-1 at 4). Despite this disclosure, JCB allegedly did not seek any written discovery regarding Moore. Moreover, JCB allegedly did not ask Plaintiff about Moore during Plaintiff's deposition nor did JCB take Moore's deposition.

JCB now seeks to prevent Moore from testifying at trial. According to JCB, Plaintiff's disclosure of Moore was inadequate because it did not explain "how and when Mr. Moore was subject to discrimination, or by whom." (Doc. 75 at 3). JCB also argues any testimony by Moore would be "hearsay" and any testimony would be inadmissible pursuant to Federal Rule of Evidence 404(b). Plaintiff responds that his disclosure of Moore was appropriate but, even if not, JCB had ample opportunity to clarify the basis of Moore's planned testimony during discovery. Plaintiff also argues the "party admission exception to the hearsay rules" will apply and that Moore's testimony will not run afoul of Rule 404(a).

Moore is not listed in the parties' Joint Proposed Pretrial Order as a witness Plaintiff plans on calling. (Doc. 89 at 6-7). Therefore, the motion to preclude Moore likely should be denied as moot. But assuming Plaintiff were granted leave to amend the Joint Proposed Pretrial Order such that Moore could be called, JCB's disclosure argument is not convincing.

Pursuant to Rule 26(a)(1)(A), Plaintiff was required to provide "the name and, if known, the address and telephone number of each individual likely to have discoverable

information—along with the subjects of that information—that [Plaintiff] may use to support [his] claims or defenses." Plaintiff complied with this requirement. Plaintiff listed Moore, provided his telephone number, and stated he would testify regarding "discrimination by Defendants." While vague, JCB had ample opportunity to seek clarification if necessary. JCB could have raised its concerns much earlier or deposed Moore to determine what he would testify to in this case. Instead, JCB apparently took no action, meaning JCB does not even know what Moore will testify about.

Because JCB has no idea what Moore might say at trial, the motion in limine is based on pure speculation. For example, JCB states Moore's testimony would be "hearsay." But given that JCB does not know what Moore will testify about, it is impossible to know whether his testimony will be hearsay or, if the testimony is hearsay, whether an exception to the hearsay rule applies. Similarly, JCB argues Moore's testimony will be barred by Rule of Evidence 404(b). But that argument also requires knowing what, exactly, Moore will say. In short, JCB seeks to preclude a witness from testifying without having any idea what the witness will say.

JCB will be given the opportunity to file a supplement identifying the *specific* testimony by Moore it seeks to exclude. If JCB is not able to identify the specific testimony at issue, and explain why it is not admissible, the Court will not preclude Moore.

**B. Preclude Nelson Calloway from Testifying**

In his First Supplemental Disclosure Statement, Plaintiff listed Nelson Calloway and stated "Mr. Calloway was an Owner Operator for JCB Trucking. Mr. Calloway identified inaccuracies with his payment from JCB Trucking. Mr. Calloway will testify regarding the same, as well as his observations of interactions between Mr. Eaton and Mr. Turner." (Doc. 76-1 at 4). JCB argues this disclosure was insufficient because it has no way of knowing what "testimony Mr. Calloway may give or what documents he might use." (Doc. 76 at 3). JCB also argues Calloway's testimony is irrelevant because "[w]hether or not there were inaccuracies in payments . . . to Mr. Calloway has no relevance whatsoever to whether there was racial discrimination." (Doc. 76 at 4). JCB also argues

Calloway's testimony should be precluded by Rule 404(b) and any documents Calloway might reference would be "hearsay."

Plaintiff responds that his disclosure of Calloway was adequate and JCB "gambled by not taking advantage of discovery available to it" to discover the details of Calloway's expected testimony. Plaintiff explains that Calloway will be called to testify regarding "Defendant's bookkeeping and inaccuracies," topics that are relevant to Defendant's counterclaims. Plaintiff also states Calloway's testimony regarding the interactions between Plaintiff and Mr. Eaton will be relevant and admissible.

As with the motion regarding Moore, JCB's disclosure argument is not convincing. Plaintiff identified Calloway, provided his phone number, and stated the subjects of Calloway's testimony. To the extent JCB now claims it has no way of knowing what Calloway will testify about, that is because of JCB's decision not to seek discovery. As for the admissibility of Calloway's testimony, JCB is again merely speculating. The Court cannot evaluate the admissibility of Calloway's testimony without knowing what, in fact, Calloway will testify to and why that testimony is not admissible. JCB will be given an opportunity to identify the *specific* testimony it seeks to exclude.

### C. Preclude Mark Hamilton from Testifying

In his First Supplemental Disclosure Statement, Plaintiff listed Mark Hamilton and stated "Mr. Hamilton was on the telephone when Mr. Eaton called in and made derogatory remarks concerning Plaintiff. It is anticipated that he will testify regarding the same." (Doc. 77-1 at 4). JCB argues this disclosure was inadequate because it "does not state what telephone Mr. Hamilton was on, what he heard Mr. Eaton say and when this occurred." (Doc. 77 at 2). JCB then elaborates that the "only phone call referenced by Plaintiff in this litigation, during which derogatory statements were allegedly made" occurred on May 26, 2016 when Mr. Eaton allegedly called Plaintiff and mentioned the KKK. During his deposition Plaintiff testified that he was on the phone with his friend "Mark" when Mr. Eaton called. Plaintiff stated he asked "Mark" to "hold on" and Plaintiff "clicked over" to the other line.

In opposing the motion in limine, Plaintiff states his disclosure regarding Hamilton was adequate. Plaintiff states "Hamilton was a witness to interactions between the parties," presumably referencing the phone call. (Doc. 92 at 4).

For the same reasons outlined regarding the other witnesses, JCB's disclosure argument regarding Hamilton is not convincing. And because JCB's only argument for excluding Hamilton involves inadequate disclosure, this motion will be denied.

### D. Preclude Phone Records and Audio Recordings

JCB seeks to prevent Plaintiff from introducing phone records that, according to Plaintiff, would establish Mr. Eaton called Plaintiff on May 26, 2016. JCB also seeks to prevent Plaintiff from introducing an audio recording of that phone call as well as an audio recording of a meeting that took place on August 19, 2016. JCB argues "Plaintiff has never disclosed the foundation for [the phone records] or any custodian of record to authenticate" the records. JCB claims the records, therefore, will qualify as inadmissible hearsay. As for the audio recordings, JCB argues Plaintiff never formally "disclosed or provided" the recordings. JCB does not argue it propounded a formal discovery request seeking the recordings. Rather, JCB seems to believe Plaintiff was required to voluntarily produce the recordings.

Plaintiff responds that the telephone records will be admissible as business records and the audio recordings are "impeachment evidence" that "was not required to be disclosed." (Doc. 93 at 2).

Based on Plaintiff's response, it does not appear the telephone records will be admissible. The Joint Proposed Pretrial Order does not list a "qualified witness" who could provide the proper foundation for the records. *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990) ("qualified witness" should be "broadly interpreted to require only that the witness understand the record-keeping system"). Nor has Plaintiff stated he has a "certification" contemplated by Rule 803(6)(D). Absent a qualified witness or a sufficient certification, the telephone records will not be admissible.

As for the audiotapes, Plaintiff admits he will use it only for impeachment purposes.

Plaintiff had no affirmative obligation to disclose impeachment evidence because "impeachment evidence does not have to be revealed in pretrial disclosures." *Gribben v. United Parcel Serv., Inc.*, 528 F.3d 1166, 1172 (9th Cir. 2008). Of course, if JCB had propounded a discovery request for the recordings, the situation would be very different. But JCB does not argue the recordings were responsive to a discovery request. Accordingly, the telephone records will be excluded but the recordings may be admissible for impeachment purposes.

**III. Jury Instructions**

The parties filed their original set of proposed jury instructions on August 15, 2019. The next day, the Court explained the parties had not complied with the Court's procedures and instructed them to file a revised set of jury instructions. The Court specifically instructed that for any instructions where "the parties do not agree . . . the opposing party shall clearly state its objection to the proposed instruction, and the proposing party shall clearly state its response." (Doc. 84 at 2). Those instructions were meant to require the parties provide reasoned explanations of their objections and reasoned responses.

On September 3, 2019, the parties filed a revised set of jury instructions. Those instructions indicate the parties have objections to certain instructions but there is no explanation for the basis of the objections nor are there responses to the objections. The parties will be required to file another set of jury instructions. In an attempt to be even clearer, the proposed jury instructions must contain the following sections:

**A.    Preliminary Instructions (before opening statements)**

The parties shall list their preliminary instructions in the order in which they propose that such instructions will be read to the jury. At the top of each instruction, the parties should indicate whether the instruction is stipulated or disputed.

If an instruction is disputed, the party proposing the instruction shall include citation to authority to support the requested instruction. The party opposing the instruction shall state all objections to such instruction immediately following the instruction and the opposing party's authority for such objections. Those objections must be accompanied by

a brief explanation of the objections. The party proposing the instruction must then provide a brief response to the objections.

### B. Mid-Trial Instructions (limiting instructions etc.)

The parties shall list all limiting instructions that they propose should be read during the trial. At the top of each instruction, the parties should indicate whether the instruction is stipulated or disputed.

If an instruction is disputed, the party proposing the instruction shall include citation to authority to support the requested instruction. The party opposing the instruction shall state all objections to such instruction immediately following the instruction and the opposing party's authority for such objections. Those objections must be accompanied by a brief explanation of the objections. The party proposing the instruction must then provide a brief response to the objections.

### C. Final Instructions (after closing arguments)

The parties shall list their final instructions in the order in which they propose that such instructions will be read to the jury. At the top of each instruction, the parties should indicate whether the instruction is stipulated or disputed. If either party seeks to have any preliminary instruction or mid-trial instruction repeated as part of the final instructions, such party should restate that instruction in this section.

If an instruction is disputed, the party proposing the instruction shall include citation to authority to support the requested instruction. The party opposing the instruction shall state all objections to such instruction immediately following the instruction and the opposing party's authority for such objections. Those objections must be accompanied by a brief explanation of the objections. The party proposing the instruction must then provide a brief response to the objections.

**IV. Possible Sanctions**

After being informed that their original jury instructions did not comply with the Court's procedures, the parties were given another chance. But their second submission still did not comply with the Court's procedures. If either party fails to comply with this

Order the Court will impose sanctions up to dismissal of claims or counterclaims, assessment of attorneys' fees, or a finding of contempt of Court.

Accordingly,

**IT IS ORDERED** no later than **September 6, 2019**, Plaintiff shall file a statement outlining the claims he will pursue at trial, the elements for each claim, and the evidence supporting each element. Plaintiff shall also outline the evidence he will introduce to establish Title VII applies. And Plaintiff shall state whether he plans on calling Mike Moore.

**IT IS FURTHER ORDERED** no later than noon on **September 9, 2019**, JCB shall file a single document outlining the specific testimony it seeks to preclude from Mike Moore (if he will be called) and Nelson Calloway. JCB must explain how it knows the contents of this testimony and why it will not be admissible.

**IT IS FURTHER ORDERED** the Motions in Limine (Doc. 75, 76, 77) are **DENIED** subject to being reevaluated upon submission of JCB's supplement.

**IT IS FURTHER ORDERED** the Motion in Limine (Doc. 78) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** the parties shall file a revised set of jury instructions no later than noon on **September 9, 2019**.

Dated this 4th day of September, 2019.

Honorable Roslyn O. Silver
Senior United States District Judge